William P. BUTLER, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.

No. 87–1911.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1987.

Decided June 24, 1988.

Robert W. Pratt, Des Moines, Iowa, for appellant.

Richard L. Richards, Des Moines, Iowa, for appellee.

Before ARNOLD and FAGG, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

William Butler appeals from the judgment of the district court entered in favor of the Secretary of Health and Human Services denying him disability insurance

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

benefits and supplemental security income benefits. *See* 42 U.S.C. §§ 423, 1381, 1381a. Butler is a 48 year old male with a seventh grade education. He last worked as a self-employed roofer, an occupation which he had engaged in for 22 years. Butler alleges he became disabled on September 10, 1984, because of a combination of problems, including heart trouble, emphysema, and back surgery. When his applications for benefits were denied initially and upon reconsideration, Butler requested a hearing before an administrative law judge (ALJ). Butler's testimony before the ALJ and the medical evidence submitted in connection with his claim contain evidence of pain associated with the above conditions, as well as a history of alcohol abuse and a possible psychological overlay to his symptoms.

The ALJ found Butler had a "history of unstable angina" as well as "a history of bonafide back and neck problems," and credited his allegations of pain related to his back. Concluding Butler could not perform his past relevant work as a roofer, the ALJ nonetheless determined Butler retained the residual functional capacity for the full range of light work and applied the Medical–Vocational Guidelines to find Butler not disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 (1987). The Appeals Council declined reconsideration, making the ALJ's decision the final decision of the Secretary. The district court affirmed the Secretary's decision, and Butler has appealed to this Court.

In reviewing the Secretary's decision, we, like the district court, must determine whether that decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987); *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). "Substantial evidence on the record as a whole" means that we must evaluate the entire record, taking into consideration not only the evidence which supports the Secretary's decision, but also that which fairly detracts from its weight. *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987); *Gavin*, 811 F.2d at 1199; *Brock v. Secretary of*

*Health & Human Services*, 791 F.2d 112, 114 (8th Cir.1986).

While the Secretary's weighing of conflicting evidence will not be disturbed if the result is one that "a reasonable mind might accept as adequate to support a conclusion," *Gavin*, 811 F.2d at 1199; *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir.1984), the Secretary's decision must be assessed in light of the entire record, evaluated in accordance with the burden of proof and the standards for consideration of evidence established by this Court. Applying the "substantial evidence on the record as a whole" standard, we are convinced a remand is required in this case.

## I. DISCUSSION

This is another of the many cases in which the ALJ failed to recognize and to apply the proper allocation of the burden of proof. We have consistently held that once a claimant proves a disability prevents performance of the claimant's past relevant work, the burden shifts to the Secretary to establish there is other work in the national economy which the claimant can perform. *E.g., Talbott v. Bowen*, 821 F.2d 511, 514 (8th Cir.1987); *Rainey v. Bowen*, 814 F.2d 1279, 1282 (8th Cir.1987); *Lewis v. Heckler*, 808 F.2d 1293, 1297 (8th Cir.1987). This Court will not assume the Secretary implicitly recognized the shift. *E.g., Talbott*, 821 F.2d at 514; *Rainey*, 814 F.2d at 1282; *Lewis*, 808 F.2d at 1297. Indeed, in this case, the only language in the ALJ's opinion regarding the burden of proof suggests the burden improperly remained on the claimant.

▪ For this reason alone a remand is required, since this is not a case in which the outcome is clear regardless of who bears the burden of proof. *See Folks v. Secretary of Health & Human Services*, 825 F.2d 1259, 1261 (8th Cir.1987); *Rainey*, 814 F.2d at 1282; *Lanning v. Heckler*, 777 F.2d 1316, 1317 (8th Cir.1985). The Secretary concedes Butler met his burden of proving he could no longer perform his past relevant work as a roofer. It thus becomes the Secretary's burden to prove by medical evidence that the claimant has

the residual functional capacity to do other kinds of work and that there are jobs in the national economy which realistically suit the claimant. *Talbott,* 821 F.2d at 514–15 (citing *O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir.1983)); *Lewis,* 808 F.2d at 1297. "In determining whether there are jobs available that a claimant can perform, the Secretary must consider the claimant's exertional and nonexertional impairments, together with the claimant's age, education, and previous work experience." *Talbott,* 821 F.2d at 515; *Lewis,* 808 F.2d at 1297. The Secretary's determination regarding the ability of a claimant to perform jobs in the national economy must take into account the actual ability of the claimant to find and hold a job in the real world. *Parsons,* 739 F.2d at 1340; *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982).

The ALJ in this case determined that Butler possessed the residual functional capacity for the full range of light work. The Secretary's regulations define "light work" as follows:

> (b). *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (1987). There is conflicting evidence in the record regarding the extent to which Butler's capabilities are affected by his back, heart, and lung problems. The ALJ summarized Butler's testimony as follows:

> At the hearing, the claimant testified that he has attempted to return to his past work as a roofer nine times since September 10, 1984, but he has been able to work a total of only 20 days. He feels he is unable to work because of pain in his lower back, legs, neck, chest, and fingers, and in addition, he has shortness of breath and dizziness. He underwent surgery on his lower back in 1975 and again in 1976 and in 1981 he had a neck fusion. He described his low back pain as sharp and burning with numbness, and located at about his belt level, going down into his legs and between his shoulder blades. Sitting, driving, bending, etc., causes his pain to become worse. The claimant also described pain in his left face, down his arm and into his fingers, at times so severe he is unable to think. In June, 1984, he began having sharp and burning pain in his chest through to his back and his chest felt swollen. He was hospitalized in May, 1985, and July, 1985, because of chest pain. In addition, he has blurred vision off and on during the day, and he becomes dizzy and nauseous. He stated that he becomes short of breath and his legs become numb after walking two blocks and he cannot stand in one position for any length of time without assistance and he cannot bend without holding on to something. He indicated that he can do no stooping or squatting and he would be unable to lift ten pounds on a repetitive basis. He has a burning and tingling sensation in his hands and frequently drops objects. He also stated that he cannot sit for more than five to ten minutes without squirming. He believes his memory and concentration are impaired and he has been "moody" for the past two years. In addition, he has ringing in his left ear and is unable to breathe with humidity and temperature changes. Working with dust and fumes causes him to cough. The claimant stated that he does not read a newspaper but occasionally watches television. He goes for short walks and helps with housework but he no longer has any hobbies. He also indicated that he is unable to sleep at night because of pain.

This testimony was corroborated by Butler's companion, Alice Penny, who testified the claimant was almost always in pain, had difficulty concentrating on even simple conversation, and was subject to frequent

flares of temper and depression due to his inability to do the things he used to be able to do. She testified: "He can't even hold a fishing rod anymore."

Consulting psychiatrist Dr. Karl Northwall also substantiated Butler's complaints of pain. Northwall wrote after an examination in April, 1985, that Butler "looks quite uncomfortable as he is sitting talking to me, and shifts about uneasily in his chair, and at times gets up to stand for awhile or to walk back and forth. Thought content seems to deal mainly with his difficulty in coping with his present physical limitations." Northwall concluded that Butler is "a straight-forward, honest individual and I find his present complaints of pain to be quite credible." Another consulting physician, Dr. Hepplewhite, reviewed Butler's medical records on behalf of the Secretary in November, 1984. Hepplewhite concluded the claimant "has documented evidence of essential hypertension, anginal pain, emphysema and back problems" and that there was "an anatomical reason for his back pain."

There is, however, evidence in the record which suggests some of Butler's complaints do not correspond to the objective medical evidence, particularly insofar as his chest pain and emphysema are concerned. Treating physicians at Broadlawns Medical Center concluded that Butler was "having fairly continuous chest pain that does not appear to be cardiac in origin" based upon multiple normal EKGs and exercise tolerance tests. These physicians noted the claimant experienced components of both gastrointestinal and musculoskeletal chest pain and opined that many of his symptoms may be related to his high doses of heart medication.[1] Other physicians had previously noted a "psychological overlay" to Butler's problems and an anxiety or hysterical reaction.

Nonetheless, there is overwhelming evidence that Butler experiences pain which is corroborated by the objective medical evidence. Medical records show Butler received a lumbar laminectomy with removal of the disc at the L4–5 interspace in October, 1976. He was hospitalized again in December, 1976, for another laminectomy at the same site to repair a cerebrospinal fluid fistula, to remove a pseudo-meningomyelocele and to repair a tear in the spinal cord membrane. Four months later, Butler's back was injured again in an automobile accident. In March, 1980, Butler underwent an anterior cervical interbody fusion at the C5–6 and C6–7 levels. Barely two months later, he was involved in another automobile accident resulting in pain in his neck and left arm. X-rays of the claimant's back in 1985 revealed disc space narrowing at C4–5 and at C6–7, and virtually all physicians who subsequently examined Butler found evidence of degenerative joint disease of the cervical spine.

The ALJ considered this objective medical evidence in evaluating Butler's complaints of pain, and credited a portion of those complaints relating to his back. The ALJ stated in his findings that "[t]he claimant's allegations of pain related to his back are consistent with the clinical evidence of record." The ALJ clearly did not credit all of Butler's allegations of pain relating to his back, however, since he found Butler capable of a full range of light work. Butler testified he was unable to lift ten pounds on a repetitive basis, could not stand in one position for any length of time without assistance, and could not sit for more than five or ten minutes without squirming, all of which are inconsistent with the ability to perform a full range of light work. The ALJ expressly discredited Butler's complaints relating to chest pain and emphysema, stating such allegations were "not consistent with, nor supported by, the clinical findings contained in the record and testimony regarding these complaints was not credible."

While the ALJ concluded that he considered Butler's complaints of pain pursuant to this Court's ruling in *Polaski v. Heckler*, 739 F.2d 1320, *supplemented*, 751

---

1. At the time of the hearing, Butler's medications included Ibuprofen, Inderal, Theo–Dur, Isordil, Darvocet, and Procardia, although medical records suggest Butler was "noncompliant" with respect to at least some of these medications.

F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987), we find the ALJ's decision inconsistent with the Court's mandate in *Polaski*. The *Polaski* Court listed the factors the ALJ must consider in addition to objective medical evidence in evaluating complaints of pain. These factors include the claimant's prior work record and observations by third parties and physicians relating to: the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. 739 F.2d at 1321–22; 751 F.2d at 948.

■ In this case, the ALJ appeared to rely primarily on the existence of objective medical evidence in determining the degree to which Butler's complaints were credible. This in itself is not error, but we caution the ALJ to remember, on remand, that an ALJ may not reject complaints of pain *solely* because of lack of objective medical evidence. *Beeler v. Bowen*, 833 F.2d 124, 126–27 (8th Cir.1987) (citing *Benson v. Heckler*, 780 F.2d 16, 17 (8th Cir.1985)); *Anderson v. Heckler*, 805 F.2d 801, 806 (8th Cir.1986). The absence of an objective medical basis which supports the degree of severity of pain alleged by the claimant is *just one factor* to be considered in evaluating credibility of the testimony and the complaints. *E.g., Anderson*, 805 F.2d at 806; *Herbert v. Heckler*, 783 F.2d 128, 130 (8th Cir.1986); *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

■ Under *Polaski*, the Secretary must demonstrate that *all* of the evidence was in fact considered. The ALJ's credibility determination in this case does not discuss all of the factors required by *Polaski*, even though there is evidence on the record of each factor. This is not a proper application of *Polaski*. *See Beeler*, 833 F.2d at 126; *Folks*, 825 F.2d at 1262; *Fraction v.*

*Bowen*, 787 F.2d 451, 454 (8th Cir.1986); *Herbert*, 783 F.2d at 130.

## II. CONCLUSION

For all of the foregoing reasons, the judgment of the district court is reversed and this case is remanded to the district court with instructions to remand to the Secretary for a rehearing consistent with this opinion.

FAGG, Circuit Judge, dissenting.

In my view, the ALJ's opinion denying benefits embodies a correct application of the legal principles that control this case and is supported by substantial evidence on the record as a whole. I would affirm, and thus, I dissent.

The court determines a remand is required here solely because "the ALJ failed to recognize and to apply the proper allocation of the burden of proof." *Ante* at 426. I continue to believe we should not automatically return cases to the district court due to a failure of the ALJ expressly to state the burden of proof has been shifted to the Secretary. *See Ulrick v. Heckler*, 780 F.2d 1381, 1383 (8th Cir.1985) (Fagg, J., dissenting). When reviewing the decision of a district court, detailed discussion of the applicable burdens of proof is not required when the appellate court is able to ascertain whether the appropriate rule was in fact recognized and applied. *See, e.g., Horn v. Duke Homes*, 755 F.2d 599, 603 & n. 1 (7th Cir.1985). Requiring more from ALJs makes unwarranted work for the judicial system and the agency, places a premium on mechanical compliance, and creates the risk of an appellate decision that "exalt[s] form over substance." *Ulrick*, 780 F.2d at 1383 (Fagg, J., dissenting).

In this case the Secretary concedes Butler cannot do his past relevant work. Under the established pattern of proof, the burden then shifts to the Secretary to show Butler has the capacity to perform other jobs in the national economy that are available to him. Although the ALJ did not expressly state the shift took place, he evaluated the evidence on this point, including the credibility of Butler's complaints of

pain. He then concluded Butler remains able to do light work and thus, is not disabled under the regulations. The record contains substantial evidence supporting this conclusion, and when considered from this perspective, I believe the ALJ's decision contains no reversible error in the application of the burden of proof.

The court makes a similar misstep when it concludes "the ALJ's decision [is also] inconsistent with the [c]ourt's mandate in *Polaski.*" *Ante* at 429. I recognize *Polaski* is the controlling authority on the required procedure for evaluating Butler's complaints of pain. I believe, however, it is clear the ALJ was equally aware of *Polaski*'s holding and significance.

As with the district courts, we should not reverse a thorough administrative decision merely because the ALJ did not, in litany fashion, make "a particularized finding on each piece of evidence presented by the parties," *White Indus., Inc. v. Cessna Aircraft Co.*, 845 F.2d 1497, 1499 (8th Cir. 1988), if that decision is stated "so that the parties and reviewing court understand what [has been] decided and why," *id.* Here, the ALJ's opinion lists verbatim each of the factors required by *Polaski* to be considered. The opinion then states Butler's "subjective complaints of pain * * * have been fully evaluated in accordance with the standard in *Polaski v. Heckler* and the Disability Benefits Reform Act of 1984." These specific statements, combined with the court's own acknowledgment that "there is evidence on the record of each [*Polaski*] factor," *ante* at 429, clearly shows the ALJ not only evaluated the record with the *Polaski* factors in mind, but also had before him ample evidence from which to draw the conclusion he did concerning Butler's claims of pain.

The ALJ fully analyzed the objective medical evidence and the subjective aspects of Butler's complaints, but also determined "[Butler's] testimony regarding [his limitations] * * * lack[ed] credibility." Merely because the ALJ exercised his judgment in the face of "conflicting evidence in the record," *ante* at 427, and concluded not all of Butler's allegations of pain were credi-

ble does not mean the ALJ "strict[ly] reli[ed] on objective medical evidence," *Beeler v. Bowen*, 833 F.2d 124, 127 (8th Cir.1987), or improperly "reject[ed] subjective complaints [of pain] solely because of lack of objective medical evidence," *id.; see ante* at 429. In my opinion, it is self-evident the ALJ's analysis of the pain component of Butler's condition included a weighing of the *Polaski* criteria and resulted in a decision that is supported by substantial evidence on the record as a whole.

In sum, by failing to look up from its appellate microscope, the court has ordered a reversal that requires nothing more than an articulation of standards already implicit in the decision we are asked to consider. In my view, compliance by the ALJ with the court's directives will add nothing to this case, and the items deemed necessary for correction on remand do not prevent us from now making a meaningful review of Butler's claims.

Because I believe the ALJ's opinion not only provides an adequate basis for review but is entirely supported by substantial evidence, I would affirm.